IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-17-183 |
| | * | |
| JAMES BULLOCK | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

James Bullock is a forty-eight-year-old federal prisoner serving a 120-month sentence for drug trafficking. Now pending is Bullock's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF 26). Bullock seeks relief based on underlying health conditions making him particularly susceptible to serious illness related to COVID-19. *Id*. The government opposes the motion, (ECF 32), and Bullock has replied, (ECF 38). For the reasons explained below, the motion will be denied.

### BACKGROUND

In June 2015, the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") initiated an investigation of a drug trafficking organization operating at the 1300 block of Washington Boulevard in Baltimore, Maryland. The investigation revealed Bullock to be a supplier of heroin to the organization. On August 8, 2016, Maryland State Police stopped Bullock in a vehicle for a speeding violation, and Bullock consented to a search of his vehicle and of his person. The search of his person revealed a plastic bag filled with approximately thirty grams of heroin, and in a subsequent search of Bullock's residence, the ATF recovered cocaine, heroin, and quinine, which can be used to mix with heroin and other narcotics. Bullock was interviewed by police, and he admitted to possessing the aforementioned heroin and cocaine and that it was intended for distribution. Bullock admitted to participating in a conspiracy to distribute narcotics in which it was reasonably foreseeable to him that he would possess between one and three kilograms of heroin and

1

between 200 and 300 grams of cocaine. (ECF 11, Plea Agreement, at 8–9). In May 2017, Bullock pled guilty to one count of conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. (*Id.* at 1, 9).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

Bullock submitted a request to his warden for compassionate release on May 24, 2020, based on underlying medical conditions making him particularly susceptible to serious illness related to COVID-19, which was denied. (ECF 26-1 at 1–2). The government does not contest that Bullock has properly exhausted his administrative remedies. (ECF 32 at 12–13). Thus, the only issues are (1) whether "extraordinary and compelling reasons" warrant the reduction of Bullock's sentence and (2) if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction.

## DISCUSSION

Under 28 U.S.C. § 994(t) the United States Sentencing Commission has the responsibility to define "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The most recent Sentencing Commission policy statement defining "extraordinary and compelling reasons" for sentence reduction, Guideline § 1B1.13, predates the First Step Act and, as the Fourth Circuit recently held, is not a policy statement that applies to motions for compassionate release brought by defendants, because its plain text "constrains the entire policy statement to motions filed solely by the BOP, . . . and not by defendants themselves." *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020) (internal quotation marks and citation omitted). In the absence of an "applicable policy statement[] issued by the Sentencing Commission" concerning what may be an "extraordinary and compelling reason" for compassionate release when a defendant brings a motion under § 3582(c)(1)(A), "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Bullock argues that his risk of developing serious illness related to COVID-19 due to his underlying medical conditions (hypertension (i.e., high blood pressure), prediabetes, weight (BMI of 27), and asthma) constitutes an "extraordinary and compelling reason" to reduce his sentence. (ECF 26 at 3–4; ECF 38 at 7–8).

The Centers for Disease Control ("CDC") has issued guidance on underlying conditions that increase an individual's risk of severe illness related to COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Dec. 29, 2020). The CDC distinguishes between those conditions where available data is strong enough and consistent enough to indicate that individuals with the condition

"are at increased risk" (e.g., obesity), and those where current data is limited or mixed, and thus sufficient only to indicate that an individual with the condition "might be at an increased risk" (e.g., type 1 diabetes). *Id.* Most of Bullock's health conditions fall into the latter group. *Id.* The CDC's data collection shows that the evidence as to whether asthma or hypertension alone poses an increased risk of severe illness due to COVID-19 is "mixed," and the evidence that being overweight is a risk factor is "limited." *Evidence used to update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (updated Nov. 2, 2020). While Type 2 and Type 1 diabetes are both linked to an increased risk of illness, the CDC has not included prediabetes among the list of conditions that may increase the risk of severe illness from COVID-19. At the same time, the CDC has also warned that "[t]he more underlying medical conditions someone has," seemingly of any type, "the greater their risk is for severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Dec. 29, 2020). Further compounding the risk to Bullock is the mere fact of his incarceration, see, e.g., *Coreas v. Bounds*, 451 F. Supp. 3d 407, 413 (D. Md. 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19.").

But even if the court were to conclude that Bullock's health conditions were an extraordinary and compelling reason for his release, the compassionate release statute provides that, before reducing a defendant's sentence for "extraordinary and compelling reasons," the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *See* 18 U.S.C. § 3582(c)(1)(A). Here, the § 3553(a) factors weigh against granting relief. The court must consider the nature and circumstances of the offense and Bullock's history and characteristics. *Id.* § 3553(a)(1). Bullock's offense involved a significant quantity of drugs, and this was not the first time

Bullock engaged in such conduct: his criminal history includes four prior convictions for possession with intent to distribute a controlled dangerous substance, one of them a federal conviction in this court, and one prior conviction for carrying a handgun. (ECF 17, PSR, ¶¶ 32–35). The current offense occurred while he was on supervised release for the federal conviction. Moreover, the court must ensure that a sentence reflects the seriousness of the offense, promotes respect for the law, and affords adequate deterrence. *See* § 3553(a)(2)(A)–(B). Bullock has served only thirty-five months, approximately thirty percent of his ten-year sentence. Accordingly, the court finds that the balance of the § 3553(a) factors weighs against granting compassionate release here.

## CONCLUSION

For the foregoing reasons, Bullock's motion for compassionate release (ECF 26) will be denied. The associated motion to seal (ECF 31) will be granted to protect the confidentiality of personal information. A separate order follows.

|  |  |
|---|---|
|    2/2/21    |    /S/    |
| Date | Catherine C. Blake |
|  | United States District Judge |